HAMBURGER BROTHERS & CO., INC., Third Party and Appellant, *v.* LUIS F. DÍAZ LLENZA, substituted by ENRIQUE CATONI LANDRÓN, Plaintiff and Appellee, and HAMBURGER BROTHERS & CO., Defendant.

No. 7827. Argued June 2, 1931.—Decided July 22, 1939.

*Francisco González Fagundo* for appellant. *Luis Pereyó* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

On October 4, 1934, the Clerk of the District Court of Humacao issued by order of the judge an order of execution addressed to the marshal of said court, to comply with a judgment for $633.97 entered in favor of L. F. Díaz, subrogated by E. Catoni, in an action for damages which he prosecuted in the court aforesaid against Hamburger Bros. & Co. In fulfillment of said order the marshal on the following day levied an attachment on an automobile which he entrusted to the custody of Juan Jiménez, said officer certifying besides that three days after, that is, on October 8, 1934, A. Sierra, as agent for Hamburger Bros. Co., Inc., presented to him a written statement under oath wherein he claimed the automobile attached as his own, for whose delivery he demanded a bond for one thousand three hundred dollars, that is, twice the amount in which the car had been appraised, bond which was given by E. Gómez and J. M. Rocafort and that he (the marshal) ordered in consequence the delivery of the automobile to Sierra.

After these documents had been filed, the clerk of the court, on October 15, 1934, certified to have notified the

parties about the writing in good faith, required by an "Act to provide for the trial of the right to real and personal property", which had been filed by Hamburger Brothers Co. Inc., claiming the automobile attached as his own, accompanied by a bond for its delivery.

On October 26, Catoni, the defendant on the third party proceedings, appeared, and on November 17, 1934, Hamburger Brothers Co., Inc., filed its complaint in third party proceedings, alleging to be a corporation organized according to the laws of the United States and registered in the Office of the Executive Secretary of Puerto Rico, that the automobile attached was its exclusive property and that at no time had it belonged to Hamburger Brothers & Co., which was a different entity, and that it did not owe anything to Díaz or Catoni, nor had they any claim against it.

The defendant Catoni answered denying that the third party was the owner of the automobile in question and alleging as a special defense that Hamburger Brothers & Co. had done business in Puerto Rico without being authorized by the Executive Secretary of the Island and that it transferred all its capital to the third party although both were the same person or corporation managed by the same persons, and that the automobile attached was the property of Hamburger Brothers & Co. and that it was so registered in the Department of Interior (automobile division) until the date of the attachment.

The case went to trial and the court decided it by judgment entered on March 2, 1938:

"It having been shown in the trial of this case that the businesses of Hamburger Brothers & Co. were transferred to Hamburger Brothers & Co., Inc. the third party in the case at bar, which took full charge of the assets and liabilities of the former, the complaint in third party proceedings filed is dismissed, the costs of the proceedings being imposed upon the third parties, as well as the amount of $100.00 as reasonable attorney's fees for the defendant who appears from the record."

Feeling aggrieved the third party appealed, assigning in its brief three errors committed in its opinion by the lower court in deciding that due to the sole fact that Hamburger Bros. & Co., Inc. took charge of the assets and liabilities of Hamburger Bros. & Co. the third party proceedings filed should have been dismissed; in permitting witness Arsenio Sierra to be examined as to his relationship with Hamburger Bros. & Co. while he testified as a witness for the third party, and in acting against the law which regulates third party proceedings.

The first two assignments are jointly considered.

■■ The third party began its evidence by presenting the license of the attached automobile issued in its name. Then it presented witness Arsenio Sierra. That was all the evidence offered in the case, as the party defendant did not present any, solely relying upon the documents relating to the attachment. It is necessary then, to know what the witness testified and how he was questioned in order to decide whether or not the errors assigned were committed:

Sierra said:

"Q.—What is the witness's name?

"A.—Arsenio Sierra.

"Q.—What is your occupation?

"A.—I am engaged in the tobacco business.

"Q.—Do you work for any company?

"A.—I work for the corporation Hamburger Bros. & Co., Inc.

"Q.—Do you know if that corporation on or about the month of October was the owner of any automobile?

"A.—Yes, sir.

"Q.—What automobile?

"A.—A Buick, license No. 677.

"Q.—From whom did it buy said car?

"A.—From Figueroa & Gautier.

"Q.—At the date when said car was attached, in whose possession was it?

"A.—In the possession of Hamburger Bros. & Co., Inc.

"Q.—Has that car been on any occasion the property of Hamburger Bros. & Co.?

"A.—Never.

"Q.—Has it ever been in the possession of Hamburger Bros. & Co.?

"A.—Never.

"Q.—Has it ever been in the possession of Hamburger Bros. & Co., Inc.?

"A.—Yes, sir, Incorporated.

"Q.—Who paid that?

"A.—Hamburger Bros. & Co., Inc.

"Q.—And who bought it?

"A.—Arsenio Sierra.

"Q.—Has that car been on any occasion registered in the name of Hamburger Bros. & Co.?

"A.—Never.

"Q.—Who provides for the expenses and upkeep of that automobile since the date when it was bought?

"A.—The corporation.

"Q.—What corporation?

"A.—Hamburger Bros. & Co., Inc.

"Q.—Do you know if that corporation which you represent owed any amount to Luis F. Díaz Llenza?

"A.—No, sir.

"Q.—And to Enrique Catoni?

"A.—No, sir.

"Q.—Do you know if there is any judgment entered against this corporation?

"A.—No, sir.

"Q.—In favor of any of these persons whom I have named?

"A.—In Puerto Rico, none.

"That is all.

"Plaintiff:

"Q.—When was it that you acquired that car for the corporation which you represent, on what date?

"A.—In the month of March.

"Q.—In the month of May?

"A.—In March, 1934.

"Q.—What is your position in the corporation Hamburger Bros. & Co., Inc.?

"A.—Agent.

"   *       *       *       *       *       *

"Q.—Did you know the company Hamburger Bros. & Co.?

"A.—I knew it.

"Q.—How did you happen to come to know this company?

"A.—I was at first employed with Hamburger Bros. & Co.

"Q.—What was your position in Hamburger Bros. & Co.?

"Third party: I object as I understand that that could be proven later on by my colleague when he employs him as his witness.

"Judge: No, because he has testified in regard to both companies.

"Plaintiff: He has testified in regard to both companies.

"Third party: He has testified so in answer to my questions.

"Judge: He may testify.

"Third party: We respectfully take exception as we understand that our colleague is trying to prove his case with our witness.

"Plaintiff:

"Q.—What was your position in Hamburger Bros. & Co.?

"A.—Agent.

"Q.—Manager?

"A.—Yes, sir.

"Q.—What persons composed Hamburger Bros. & Co.?

"A.—Of those that composed it I only knew Hamburger.

"Judge:

"Q.—How is that?

"A.—I only knew Hamburger.

"Q.—Who is that Hamburger?

"A.—Benjamín Hamburger.

"Q.—What were you to that Benjamín Hamburger here in Puerto Rico?

"A.—To him nothing, to the society, yes.

"Q.—What were you then to the society?

"A.—Manager of the society.

"  *       *       *       *       *       *       *

"Q.—Were you the attorney in fact to act for Hamburger Bros. & Co.?

"A.—Yes, sir.

"Q.—Who gave you that power of attorney?

"A.—The firm Hamburger Bros. & Co.

"Q.—Look at this power which I show you.

"Third party: Your Honor, I do not wish to disturb the court with objections, I request that all this questioning be understood as excepted to, as I understand that it is inmaterial and irrelevant at this stage of the proceedings and that my exception be noted.

"Judge: Very well, it shall be understood as objected to, a similar ruling to be entered if the same exception is taken.

"Plaintiff:

"Q.—Is that the power of attorney granted to you by Luis Hamburger so that you could act?

"A.—Not Luis Hamburger.

"Q.—Benjamín Hamburger, to act on behalf of Hamburger Bros. & Co.?

"A.—Yes, sir.

"   *      *      *      *      *      *      *

"Q.—Who are the persons who have incorporated the corporation Hamburger Bros. & Co., Inc.?

"Third party: The best evidence would be a certificate of the incorporation.

"Plaintiff: We have it here but I want to question him because he knows it, as he is the Manager of the corporation.

"Judge: The question is allowed.

"Third party: We respectfully take exception as to the ruling of the court.

"A.—I only know one.

"Plaintiff:

"Q.—Who is that one?

"A.—Benjamín Hamburger.

"Q.—What position does Benjamín Hamburger occupy in the corporation Hamburger Bros. & Co., Inc.?

"A.—President.

"   *      *      *      *      *      *      *

"Q.—And that same person is the one who was president or owner of Hamburger Bros. & Co.?

"A.—Yes, sir.

"Q.—Is he the same person?

"A.—Yes, sir, but the entity was changed.

"Q.—So that that same person who is the president of the corporation is the one who gave you the power of attorney to act on behalf of Hamburger Bros. & Co.?

"A.—It was granted to me by the corporation in general, not by Benjamín.

"Judge:

"Q.—Tell me, the former entity, the first entity named Hamburger Bros. & Co., does it exist yet?

"A.—No, sir.

"Q.—Why does not it exist, if you know?

"A.—The business of Hamburger Bros. & Co. ceased in the year 1933.

"Q.—Due to what did it cease?

"A.—They formed a corporation.

"Q.—Then the partnership was dissolved?

"A.—The partnership was dissolved by agreement.

"Q.—By common agreement of its partners?

"A.—Yes, sir.

"Q.—How was that partnership liquidated?

"A.—The manner in which it was liquidated, I am not sure as to the manner in which it was liquidated as a corporation was formed.

"Q.—Who took charge of the business and capital?

"A.—The corporation.

"Q.—Did the corporation take charge of the whole capital?

"A.—Yes, sir.

"Q.—Including the liabilities, of course?

"A.—Yes, sir.

"  *        *        *        *        *        *        *

"Q.—Answer this question which I am going to ask you, if you know, being Manager of this corporation: The amount or the debt or whatever may be the case, the claim due to which that automobile was attached, was it an obligation contracted directly by the corporation or did it come from the former entity?

"A.—It belonged to the former entity.

"Third party: Do you know if Hamburger Bros. & Co., Inc., took charge of the payment of that judgment of Hamburger Bros.?

"A.—No, sir.

"Q.—Never?

"A.—No, sir.

"Q.—You personally know that?

"A.—Yes, sir."

We do not think that there was manifest error in the manner in which the examination was conducted. In our opinion, the party defendant could have cross-examined the witness in the manner in which it did it without having to present him as his own witness, as the cross-questions were the logical consequence of the questions.

It is in regard to the result of the evidence that we entertain some doubt. It was not shown at all that the automobile attached was at the date of the attachment the property of Hamburger Bros. & Co., nor that it was registered in its name, as it was alleged by Catoni in his answer. On

the contrary, the third party proved that the automobile was registered in its name when it was attached.

The truth of the judgment entered in favor of Catoni and against Hamburger Bros. & Co. arises from the return of the attachment. And in the testimony of Sierra is shown the close relationship existing between that entity and the corporation, the third party. We know that the third party is a corporation. It is not definitely known what Hamburger Bros. & Co. was. A same person, Benjamín Hamburger, was its president and is president of the third party. Upon Hamburger Bros. & Co. being dissolved, the third party took charge of the liquidation of the assets and liabilities the exact terms of the contract not being known. We are not concerned with an action for the collection of a judgment, prosecuted against the third party as liquidator. We are concerned with an automobile directly attached for the collection of a judgment entered against Hamburger Bros. & Co. in liquidation, the attachment having been levied and the automobile having been described as property belonging to the debtor, and in regard to this point, the evidence in truth is deficient, there existing to the contrary demonstrative evidence to the effect that said automobile is and was at the time of the attachment, the property of the third party, nothing existing in the evidence to show that the automobile originally belonged to Hamburger Bros. & Co. and that afterwards it became the property of the third party.

Pershaps we are concerned with a just judgment, but as it is not upheld by the evidence it cannot prevail.

Having arrived to this conclusion, it is not necessary that we examine the third of the errors assigned. By reason of the existence of the first one, the jugment appealed from is reversed and another entered acknowledging the right of the third party to the automobile in question and consequently declaring the attachment void, imposing the costs upon the defendant, but not attorney's fees.

Mr. Justice Travieso took no part in the decision of this case.